### SMITH v. ADSIT.

Where a complainant alleging himself to be a *bonâ fide* purchaser, and setting out a case in the highest State court for equitable relief against a sale to other parties which an owner of land had undertaken to make, alleged that the party in making such second sale had violated an act of Congress which made such sale void, and that the purchaser knew this; and alleged also that the sale was made through fraud and imposition on the vendor, with a prayer that the purchaser at such second sale might be held a trustee for the complainant—if, in such case, the court, holding that there was no fraud and no trust proved, dismiss the bill *in consequence* of that want of proof, and consequently for want of equitable jurisdiction, the fact that it says: "The most that can be said is that the transaction was in violation of an act of Congress, but that would not give a court of chancery jurisdiction to hold the second purchaser a trustee and make him accountable as such," does not show that there has been drawn in question the construction of a statute of the United States, and that the decision has been against the title or right set up or claimed by the complainant under such statute. The case rested on the fact of a trust proved, and on the extent of the State court's equitable jurisdiction; matters not the subject of review under section 709 of the Revised Statutes, the 25th section of the Judiciary Act of 1789. The case, which was between the same persons as those mentioned in *Smith* v. *Adsit* (16 Wallace, 185), held to be undistinguishable from that one.

ON motion to dismiss, for want of jurisdiction, a writ of error to the Supreme Court of the State of Illinois; the case being thus:

An act of Congress of February 11th, 1847, providing for raising a military force for a limited time, enacted that a bounty in the form of one hundred and sixty acres of land, to be located by the warrantee, should be given to soldiers honorably discharged, but provided "that all sales, mortgages, *powers*, or other instruments of writing going to affect the title or claim to any such bounty right, made or executed prior to the issue of the warrant or certificate, should be null and void to all intents and purposes whatever."

With this statute in force Smith filed a bill in one of the inferior State courts of Illinois, against Adsit, Wright, Rourk, and certain trustees of schools, charging that in

1850, by conveyance from one Holmes, he, Smith, became the owner of certain lands described. The bill averred that Holmes had been a soldier in the Mexican war, that he received a certificate of service and of honorable discharge, entitling him, under the acts of Congress, to a land warrant, and that he applied to Adsit to procure the warrant for him; that Adsit prepared the necessary papers, and at the same time made out a power of attorney for Holmes, authorizing the assignment of the land warrant about to be obtained, with blank spaces for its date, for the number and date of the warrant, and for the name of the attorney, and that he fraudulently induced Holmes to sign it; that this power of attorney was filled up subsequently, and after the land warrant was obtained, with the name of one Hoard as the attorney, with the number and date of the warrant issued (No. 23,129, date August 18th, 1848), and with August 30th, 1848, as the date of the power. The bill further charged that Adsit then procured the attorney to assign the warrant to him, that he located it and obtained for the land a patent in his own name, as assignee of Holmes; that at the date of the power Holmes was a minor, and that the defendants, Wright, Rourk, and the school trustees, hold the land under conveyances from Adsit, with notice of the plaintiff's rights; that the power of attorney was a nullity because obtained by fraud, and because of the minority of Holmes; and it averred that if any sale was made by him to Adsit of the land warrant, it was in fact made before the warrant was issued, that it was therefore null by force of the act of Congress, and that consequently Adsit held and located the warrant as a trustee for Holmes, and that the purchasers from him were chargeable with the same trust.

The prayer of the bill was that Adsit might be decreed to have acquired the lands in trust for Holmes; that the other defendants might be decreed to have purchased them, and to hold them charged with the same trust; that an account should be directed, and also a conveyance to the plaintiff as assignee of Holmes. There was also a prayer for general relief.

The answer of Adsit, *responsive to the bill*, fully denied the fraud charged, and averred that he purchased the land warrant from Holmes, without any agreement to act as his agent; and the other defendants set up that they were *bonâ fide* purchasers from Adsit, without notice of any equity in Holmes. Both Holmes and Adsit were examined as witnesses. Holmes swore to matters showing a trust; Adsit swore that the matters thus sworn to were false.

The court in which the bill had been filed entered a decree against Adsit for $6829, and dismissed the bill as to the other defendants. Adsit then appealed to the Supreme Court of the State, where the decree against him was reversed, and the bill dismissed as to him, *for want of jurisdiction;* nothing further appearing—that is to say, no reason or exfoliation of the grounds of the decree being given. From that decree Smith, the complainant, appealed to this court, under an assumption that the case came within section 709 of the Revised Statutes (the 25th section of the Judiciary Act of 1789, or the act of February 5th, 1867, amendatory of it), and that a title, right, or privilege under a statute of the United States, had been specially set up and claimed by him and decided against by the Supreme Court of the State.*

But this court dismissed the writ. It said:

"We do not perceive that we have any authority to review the judgment of the State court. Plainly, if there be any Federal question in the case it is because the plaintiff claimed some title, right, privilege, or immunity under the act of Congress to which reference was made in his bill, and because the decision of the court was against the title, right, privilege, or immunity thus set up or claimed. Such a claim and such a decision must appear in the record. But we think this does not appear. It must be admitted that the question whether the sale of the land warrant by Holmes to Adsit, if made before the warrant issued, as charged in the bill, was not a nullity, may have been presented, but it does not appear that such a question was de-

---

* For the exact language of the acts referred to, and in the main sufficiently familiar to the profession, see Appendix.

cided, much less that it was decided adversely to the plaintiff in error.

"The bill was dismissed for want of jurisdiction. The judgment of the court respecting the extent of its equitable jurisdiction is, of course, not reviewable here. The record does not inform us what other questions, if any, were decided. It nowhere appears that the sale from Holmes to Adsit was ruled to be valid, notwithstanding the act of Congress which declared that sales of bounty-rights, made or executed prior to the issue of land warrants therefor, shall be null and void. Nor was it necessary to the decree that was entered that such a decision should have been made. After the land had been sold by Adsit to *bonâ fide* purchasers without notice, which had been decreed in the court below, from which decree there was no appeal— after it had thus been settled that there was no continuing trust in the land—it may well have been determined that the plaintiff's remedy against Adsit was at law, and not in equity, even if the sale from Holmes to him was utterly void. But whatever may have been the reasons for the decision, whether the court had jurisdiction of the case or not, is a question exclusively for the judgment of the State court."

Smith, the complainant below, now brought the case here on a new writ. In the present instance a revision of the statutes of Illinois by its legislature, made A.D. 1874, having enacted that the opinion of the court should be a part of the record of every case, the opinion below was made part of the record, which it had not been when the case was here below, A.D. 1872. This opinion said:

"There is no evidence of a trust or of fraud on the part of Adsit, his testimony balancing that of Holmes on that point. Nothing, therefore, is left of the case but the fact of obtaining, by Adsit, Holmes's discharge, and procuring thereon a warrant to be issued for the land in controversy. *The most that can be said of this is that the transaction was in violation of an act of Congress, but that would not give a court of chancery jurisdiction to hold Adsit as a trustee and make him accountable as such.*

"None of the matter alleged, of trust and of fraud, has support in the testimony; nothing appears to corroborate Holmes's statements, and they being denied by Adsit, the one is as much

entitled to belief as the other. *There is nothing, then, in the record sufficient to give a court of chancery jurisdiction of the subject-matter; there being no fraud and no trust established.* Consequently the decree finding a trust existed must be reversed, and the bill must be dismissed.

"If Holmes has any right to the money Adsit received for the land, he can prosecute that right in a court of law, and recover according to the justice of his case.

"DECREE REVERSED."

*Mr. W. J. Burgess, for the plaintiff in error and in support of the jurisdiction:*

The statutes of the State of Illinois* make the opinion of the court part of the record.

Does that record thus composed present the question necessary to give this court jurisdiction? Has a right claimed under a statute of the United States been denied by the Supreme Court of the State? That one has been, appears from the record; from the language of that court used twice. First that court said:

"Nothing is left of the case, but the fact of obtaining by Adsit Holmes's discharge, and procuring thereon a warrant to be issued for the land in controversy. The most that can be said of this is, *that the transaction was in violation of an act of Congress.*"

And then that court denied the relief which the plaintiff, by reason of that act, claimed as entitled to. It said:

"That would not give a court of chancery jurisdiction to hold Adsit as a trustee, and make him accountable as such."

Holmes set up, under the act of Congress referred to in the bill of complaint, that he was entitled to the land. The legal title Adsit had acquired from the United States. He transferred it to other parties before he obtained his patent upon the papers as they existed in the land office. These papers, and the patent when issued, advised all parties, claiming under them, that the sole right in Adsit in this land, was

---

* Revised Statutes, 1845, § 19, p. 144; Revision of 1874, p. 329.

as the assignee of Holmes, under a land warrant, issued to Holmes and assigned to Adsit under the power of attorney. *That power was simply void by the act of Congress set up in the bill.* Holmes so claimed it, and assigned the land to Smith, the complainant, and the plaintiff in error, who avers in his bill that by reason of that violation he is entitled to the legal title and a conveyance of the land from the parties who had derived that legal title from Adsit, with notice. Whether the facts will sustain the right as set up is one thing; but a right under an act of Congress is specifically made in the pleadings of this case, and the decision of the State court is *in totidem verbis* against that right. So that we have alike in the pleadings and in the judgment of the court, this vital question both raised and denied of record.*

*Mr. Thomas Wilson, contra, and against the jurisdiction,* contended that the case was essentially the same as when before the court in 1872, and that the sentence relied on from the opinion did not change it; that the court below had decided that no trust was proved; and, of course, that there was nothing for a chancellor to act on. That whatever might have been said *en passant* or adjectitiously, this was the ground on which the judgment below was rested.

Mr. Justice STRONG delivered the opinion of the court.

We do not perceive that this case differs essentially from what it was in 1872, when it was dismissed for want of jurisdiction in this court to hear it. In the Supreme Court of the State it was an appeal from an inferior court, in which it had been sought to enforce an alleged trust, by a bill in equity, and the bill was ordered to be dismissed, because the court was of opinion no trust was proved. The record does not show that the question whether the sale of the land warrant was a nullity if made before the warrant issued, was passed upon, much less that it was decided against the complainant. The decree ordering the bill to be dismissed must

* Bridge Prop. *v.* Hoboken, 1 Wallace, 116; Brooks *v.* Martin, 2 Id. 86.

have been made, if it had been decided that the sale was void. Even then it would have been necessary to establish the existence of a trust. What amounts to a trust, or out of what facts a trust may spring, are not Federal questions, and on a writ of error to a State court we can review only decisions of Federal questions. The case is covered by *Smith* v. *Adsit*, in 16 Wallace.

WRIT OF ERROR DISMISSED.